DOSH v. LUMBER CO.

(Filed April 2, 1901.)

PUBLIC LANDS—*Entry and Grant—Collateral Attack—Trespass.*

A grant of land lying in a county to which the entry laws apply can not be attacked collaterally for fraud or mistake in procuring such grant.

ACTION by L. P. Dosh and M. V. Dosh against The Cape Fear Lumber Company, heard by Judge *Frederick Moore* and a jury, at December (Special) Term, 1900, of PENDER County Superior Court. From a judgment for the plaintiffs the defendant appealed.

*Stevens, Beasley & Weeks,* for the plaintiffs.
*J. O. Carr,* for the defendant.

MONTGOMERY, J. This action was commenced to recover damages against the defendant for an alleged trespass upon the lands of the plaintiff, and cutting and carrying off timber

therefrom.   The defendant made no claims to possession or title to the property, and resisted the recovery on the ground that the grant under which the plaintiff claimed was void. The plaintiff had no actual possession of the land.   The grant from the State to G. A. Ramsey was introduced in evidence by the plaintiff, over the objection of the defendant, and also evidence tending to show that the boundaries covered the *locus in quo.*   The defendant introduced evidence going to prove that the land was swamp land and was a part of a body of swamp land containing about 60,000 acres; and then requested the Court to instruct the jury as follows: "That if the jury find that the land covered by the Ramsey patent is a part of a body of marshy or swamp land exceeding 2,000 acres, then the State had no right to grant the same, and the title of the plaintiff is not good."   His Honor refused to give the instruction, but told the jury that if they believed the evidence the plaintiff was owner of the lands embraced in the grant.

We see no error in the course pursued by the Court.   The contention of the defendant is that the grant under which the plaintiff claims title is void, and that it can be attacked collaterally, by an individual, in a suit in the nature of ejectment, and that too by parol evidence.   The outline of the argument of the defendant's counsel is that the State Board of Education, by Article IX, section 10 of the State Constitution, has succeeded to all the powers and trusts of the President and Directors of the Literary Fund of North Carolina; that when the constitutional provision was adopted all the swamp lands belonging to the State and all of such lands that might thereafter come to the State were vested in the President and Directors of the Literary Fund in trust as a public fund of education and the support of the common schools. Revised Code, chap. 66.   That by section 2514 of The Code the State Board of Education is authorized and empowered

to reclaim and sell the swamp lands, and that therefore that right and power can not be divided or shared in by the executive officers of the State; that marsh or swamp lands, where the quantity of land in any one marsh or swamp, exceeds two hundred acres is excepted from entry by sub-section 3 of section 2751 of The Code, and that section 2755 of The Code declares that "every entry made and every grant issued for any lands not herein authorized to be entered or granted shall be void." The defendant's deduction from the premises and argument is that the State Board of Education alone had the power to sell and convey the lands described in the grant; and further, that if that is not so, then the statute, 2751 of The Code, particularly forbids the entry and grant of any part of swamp lands out of a body of swamp lands of more than 2,000 acres; and the cases of *Stanmire v. Powell,* 35 N. C., 312, and *Lovinggood v. Burgess,* 44 N. C., 407, are cited in support of the position.

In the first-mentioned case (ejectment) the lessor of the plaintiff claimed title as follows: The General Assembly of 1848 passed a resolution which was ratified on the 26th of the following January, in these words: "(1) Resolved that the Secretary of State be and he is hereby authorized and required to issue to Ailsey Medlin for the services of her father, Benjamin Schoolfield, in the Continental line of the State in the war of the Revolution, or her heirs or assigns, a grant or grants for a quantity of land not exceeding 640 acres, to be located in one body or in quarter sections not less than 160 acres, or any of the lands of this State now subject to entry by law; said grant or grants to be issued on the application of the said Ailsey Medlin her heirs or assigns as she or they may prefer in one or four grants. (2) That the said warrant or warrants shall or may be laid so as to include any lands now belonging to the State for which the State is not bound for title: *Provided,* that this act does not extend to any

of the swamp lands of this State." In September, 1849 a grant was issued for the premises to the lessor of the plaintiff, and in the grant the resolution in favor of Ailsey Medlin was recited; also that Stanmire was her assignee, and that the land was described as being situated in Cherokee County, with the metes and bounds and quantity also set forth. The defendant there, who was in possession, claimed the land through purchase in 1838 from certain commissioners appointed by law to sell the same. This Court in that case, after laying down the broad proposition "that it is settled in this State that a grant founded on an entry made when vacant land is subject to appropriation by entry can not be collaterally impeached for defects in the entry or irregularity in any preliminary proceeding," did say, "but a distinction is equally well established that when the law forbids the entry of the vacant land in a particular tract of country a grant for a part of such land is absolutely void; and that may be shown in ejectment." There, the land entered by the plaintiff's lessor and granted by the State lay within the Cherokee boundary, and entries were forbidden within that boundary by the acts of 1778 and 1789, and upon that ground the grant was held void. It is true that the Court said in the last-mentioned case, "The state of the law respecting the swamp lands was not looked into, for, if it had been, it would have been seen that, by the act of 1836, the whole of the swamp lands had been vested in the President and Directors of the Literary Fund, with power and duty to drain, sell and convey them for the best price that could be had, as part of a trust fund for the establishment of common schools, and therefore those lands did not belong to the State in the sense of being hers, without any obligation on her part for title." But that was said incidentally and only in answer to the argument of counsel of the plaintiff's lessor that, notwithstanding the act of 1778 forbidding the entry of lands within the Cherokee

boundary, the resolution of 1848 in favor of plaintiff's lessor made an exception in her favor because of the use of the words at the end of the second section of the resolution, "provided that this act does not extend to any of the swamp lands of this State." The argument having been that all the lands of the State were open to that entry except the swamp lands notwithstanding the prohibitory legislation in reference to the Cherokee lands.

So that in that case the grant was void because entries were prohibited by law to be made within the Cherokee boundary, and no grant, therefore, of any lands of any quantity or description could be made on an entry laid within that boundary because of a want of power and jurisdiction in the executive offices of the State to make the grant; and that that fact could be shown in ejectment proceedings by the production of the statute which forbade the entry. But that case is not like the case at bar. On the contrary, the entry laws extend to vacant lands in Pender County where the lands in question are situated; and the question before us is, whether in a county where the entry laws extend, a grant for vacant lands there can be attacked collaterally for either a fraud or a mistake in the procuring of the grant. We think it can not be. In *Reynolds v. Flind,* 2 N. C., 106, it was said, "here the plaintiff has a State grant and it would be of the most dangerous consequences to void it by parol testimony." It is true that the act of 1777, chap. 1, sec. 9, says, "that every right, title, claim, etc., obtained in fraud, elusion or evasion of the premises of that act shall be deemed void; but the meaning is it shall be void as to the State, who may proceed to void it by *sci. fa.,* and having a judgment founded on that on record expressly against it—not that it shall be voided upon evidence in an ejectment by an individual citizen." In *Sears v. Parker, Ibid,* 126, it was also said, "We have often decided, and we are now of opinion that the State having granted vacant

lands, the first patentee will be entitled to hold them notwithstanding any attendant circumstances that render it voidable until it be actually avoided in the Court of Equity; and that it can not be avoided by any parol evidence given to a jury on a trial in ejectment. In *Gilchrist v. Middleton,* 107 N. C., 663, this Court held that "grants that appear upon inspection to have been issued in the face of any positive prohibition contained in a statute have been uniformly treated even in legal as distinguished from equitable proceedings as utterly void; but courts of law under the former practice would refuse to hear testimany *dehors* a grant to impeach it for fraud in obtaining it, and would hear parol evidence to invalidate it only on the ground that the law forbade it to be issued." The reason of the rule is stated in *Stanmire v. Powell, supra.* "The reason why grants for land taken up as vacant within the counties to which the entry laws extend can not be impeached collaterally is that there is a general authority in the public officer to issue such grants; and they are therefore to be taken as having been rightly issued unless that matter be directly put in issue in a proceeding to impeach them"; and in *Gilchrist v. Middleton, supra,* "while the presumption is, when no defect of authority appears upon the face of the grant, that the executive officers, who have the right to issue it, had acted within the scope of their general powers, it is otherwise when, by reading it, it is manifest that the entry had become void before its issue. With such apparent defect of power in the maker, it becomes subject to attack in the trial of issues involving the title to land, just as any deed may be impeached in such trials for want of capacity in the maker, or of fraud in the *factum,* notwithstanding the fact that the grantor is the sovereign State."

No error.