BURWELL, J., dissents arguendo, in which CLARK, J., concurs.
The extreme limit of liberality in sanctioning the admission of parol proof to explain ambiguous descriptions in deeds and contracts for the sale and conveyance of land was attained in Carson v. Ray, 52 N.C. 609, where the premises were described as "my house and lot in the town of Jefferson," and the plaintiff was permitted to show that the grantor had but one house and lot within the boundaries of that place. In discussing that case and distinguishing it from Murdock v. Anderson, 57 N.C. 77, Battle, J., delivering the opinion of the Court, took the ground that in connection with the designation of the town in which the lot was located, given in the deed passed upon in both of them (in the one case Hillsboro and in the other Jefferson), the description had been made more definite by use of the personal pronoun "my," so as to open the way for proof that the grantor had but one lot in that village, which he meant to refer to as the place of his residence.
The contract under consideration is in the following words: "Wilkesboro, N.C. 19 April, 1880 — James Harris has paid me twenty dollars on his land; owes me six more on it."
As the location of the land is not fixed directly or inferentially within the State of North Carolina, or within the United States, the receipt is still more vague than either of the instruments (479) discussed by Battle, J., and it may be assumed that no one will venture to maintain that it was not void for uncertainty before the passage of the act 1891. Indeed, the case of Fortescue v. Crawford, 105 N.C. 29, *Page 360 
is authority for holding that no right, title or interest in any land passed to the defendant upon its signature or delivery to him, since the receipt relied on by the defendant was almost identical with that under consideration.
The policy of the law in existence before that statute was enacted was to remove as far as possible the temptation to perjury by permitting parol proof to be used in aid of a defective description only where it pointed by its terms to some extrinsic evidence for explanation of its ambiguous meaning. Allen v. Chambers, 39 N.C. 125; Massey v. Belisle, 24 N.C. 170;Leigh v. Crump, 36 N.C. 299. The principle stated is fully conceded in Perry v. Scott, supra, where, though the distinction drawn by Battle,J., between cases where the personal pronoun constitutes or does not form a part of the description is disapproved, the necessity for indicating the locality by some means is clearly recognized. The receipt being utterly ineffectual to transfer any interest whatever to the defendant in 1880, when it was delivered to him, both the legal and equitable estate in the land remained vested in Mrs. A.P. Calloway for life, with remainder in fee in her children.
The Legislature unquestionably had and has the power to modify or repeal the whole of the statute of frauds, in so far as it applies to future contracts for the sale of land; but its authority to give the repealing statute a retroactive operation is as certainly restricted by the fundamental rule that no law will be allowed to so operate as to disturb or destroy rights already vested. Did the Legislature intend that Laws 1891, ch. 465, should be construed to operate retrospectively, and (480) if so, is the law in so far as it relates to preexisting rights unconstitutional?
No law which divests property out of one person and vests it in another for his own private purposes, without the consent of the owner, has ever been held a constitutional exercise of legislative power in any State of the Union. Cooley Const. Lim., star p. 165; Wilkinson v. Ward, 2 Peters, 658; Satterlee v. Matthewson, ib., 380; Hoke v. Henderson, 15 N.C. 1;Walter v. Stetson, 2 Mass. 148; Colder v. Bull, 3 Dallas, 394; Bosh v.Klack, 7 Johns., 507; Const. U.S., Art. I, sec. 10; Const. of N.C. Art. I, sec. 17; Butler v. Penn, 4 How., 416; Fletcher v. Peck, 6 Cranch, 137;Stanmire v. Taylor, 48 N.C. 207; ib., 214; King v. Comrs., 65 N.C. 603;Wesson v. Johnson, 66 N.C. 189; 1 Kent Com., 455; Stanmire v. Powell,35 N.C. 312.
Even in England, where there are no written constitutions, a statute will not commonly be construed to divest vested rights, and when giving it a retrospective effect may lead to that result it is allowed to operate prospectively only. Moore v. Phillips, 7 M. W., 536; Cranch v. Jeffries, 4 Bur., 2462. The radical difference between the rules of *Page 361 
construction prevailing in the two countries grows out of the fact that the courts in England are forced to concede the supreme and unlimited power of Parliament, while in the United States, legislatures are bound to observe and the courts to enforce the restrictions imposed upon all the coordinate branches of the government by the Federal and State constitutions. Philosophical writers upon law generally in all countries, however, deny the power of the Legislature to pass statutes that impair a right acquired under the law in force at the time of its enactment, and insist that the right to repeal existing laws does not carry with it the power to take away property, the title to which vested under and is protected by them. But the Legislature of North Carolina is (481) restrained by Article I, section 10, of the Constitution of the United States, and Article I, section 17 of the Constitution of North Carolina, not only from passing any law that will divest title to land out of one person and vest it in another (except where it is taken for public purposes after giving just compensation to the owner), but from enforcing any statute which would enable one person to evade or avoid the binding force of his contracts with another, whether executed or executory.Robinson v. Barfield, 6 N.C. 391; Butler v. Penn, supra; R. R. v. Nesbit, 10 Howard, 395; Fletcher v. Peck, supra; Terrell v. Taylor, 9 Cranch, 43;Call v. Woodard, 4 Wheat., 519.
The first case in which the constitutional inhibition against the passage of a law impairing the obligation of a contract came before the Supreme Court of the United States for construction was Fletcher v.Peck, supra. The Legislature of the State of Georgia had, by an act passed in 1795, granted land to Grinn and others, and the defendant Peck was a purchaser for a valuable consideration, holding through severalmesne conveyances under the patentees named in the act. In 1796 the same body enacted a statute repealing the act of 1795 and declaring it and all grants issued under its provisions null and void, on the ground that its passage was procured by undue influence and corruption. The Court held that the act of 1796 could not be construed to divest the title out of the defendant Peck and invest it in the State, and rested its rulings not only upon the clause of the Constitution mentioned, but also upon more general principles arising out of the organic law of all of the States. The Court said upon this subject: "To the Legislature all legislative power is granted, but the question whether the act of 1796, transferring the property of an individual to the public, be in the nature of a legislative power, is well worthy of serious (482) reflection." This was the earliest intimation that if the prohibition had been omitted in the Federal Constitution the Legislature of the State would have had no power to revoke its own grant, without the consent of innocent persons holding under it. It has since been held *Page 362 
in the appellate courts of the States generally that a law which provides for the transfer of the interest of an individual in land to another person or to the State, except for public purposes and upon just compensation, is void because it is in conflict with the provisions of the organic law, that the three coordinate branches of the government should be kept forever separate and distinct, and that no person should be deprived of his property but by the law of the land. Stanmire v. Taylor, Hoke v. Henderson,King v. Comrs., and Wesson v. Johnson, supra. It is true that the Legislature may alter the remedy if its efficacy is not impaired, or take it away if one that is not calculated to diminish the value of the debt be provided in place of it. Long v. Walker, 105 N.C. 90, and the authorities there cited. The rules of evidence may be changed by legislative enactment too; but if by giving a retrospective operation to a statute passed for that purpose it would divest any right of property that had already accrued, it should be construed to operate prospectively only, if at all. Sedgwick on Statute and Constitutional Law, page 195.
Kent (1 Com., 455) says: "A retrospective statute affecting and changing vested rights is very generally considered in this country as founded on unconstitutional principles and consequently inoperative and void."
After the legacy had been bequeathed to a married woman and when under the law then in force the husband had a right to it, subject to certain contingencies, the Legislature of New York passed an act declaring that the real and personal property of any female then (483) married should be her sole and separate property. The appellate court said: "The application of this statute to this case would be a violation of the Constitution of this State, which declares that no person shall be deprived of life, liberty or property without due process of law." Wistervell v. Gregg, 12 N.Y. 202. While acknowledging the right of the law-making power to pass remedial laws and especially statutes of limitation operating prospectively, the Supreme Court of Pennsylvania said, "It would be contrary to the spirit of legislation in Pennsylvania, from the date of its charter to the statute in question, to deprive a man of his land instantaneously under the pretense of limiting the period within which he should bring his action." Eaken v. Raub, 12 Serg. R., 340.
In Greenough v. Greenough, 11 Pa. St., 494, Gibson, C. J., discussed a statute which changed the rules of evidence by providing that every last will and testament, made and not finally adjudicated prior to the passage of the act, to which the testator had made his mark or directed his name to be written, should be deemed valid and admitted to probate on proof of the fact. The learned judge said that the law was *Page 363 
"destitute of retroactive force, not only because it was an act of judicial power, but because it contravened the constitutional provision that no man should `be deprived of life, liberty or property except by the law of the land.'" Our statute is one providing for a different mode of establishing a deed or contract which may infuse life into a contract void at the option of the party to be charged, just as that act proposed to make operative a void will.
In this State it has been settled that the Legislature is not empowered to pass an act that provides for depriving a person of his property in an unexpired term of office even by a general law or amendment to the Constitution prescribing a different mode of election, or (484) by creating a new office and turning over the emoluments and perquisites belonging to the officer during the residue of his term to the incumbent of the newly created place, because an officer has a vested right in his office for the term prescribed by law. Hoke v. Henderson, and Kingv. Comrs., supra.
In University v. Foy, 5 N.C. 58, this Court held that where escheated land had vested in the trustees of the University the Legislature was restrained by the clause of the Constitution, Art. I, sec. 17, which declared that no person ought to be deprived of property but by the law of the land, from passing an act to take away from that institution the escheated land donated to it by a former statute.
In Sutton v. Askew, 66 N.C. 172, and in Wesson v. Johnson, ib., 189, it was held that where the land was acquired by the husband, and the marriage was contracted before the passage of the act of 1868, restoring to married women their common-law right of dower, that statute would not be construed to operate retroactively, because to give such effect to it would interfere with the vested right of the husband to alien without the consent of the wife, and to pass an estate in the land free from encumbrance of an inchoate dower right. So that this Court has, in these cases also, distinctly held that no law can be so construed as to take property from one person, except for public use, and after making just compensation, and give it to another, or to encumber the property of one person by giving another such right or interest in it as will interfere with his preexisting power to alien. Hughes v. Hodges, 102 N.C. 236.
In Leak v. Gay, 107 N.C. 468, it was said that "When the (485) effect of a law is to divest the vested right of property, except for the use of the public, and then only after providing for payment of its value, it will be declared void."
In Stanmire v. Taylor, 48 N.C. 207, it appeared that the Legislature had passed an act purporting to give validity to a certain grant therefor issued, but which had been declared void by the Court in Stanmire *Page 364 v. Powell, 35 N.C. 312. The act was passed by the General Assembly in October, 1852 (after this Court in June previous had declared the grant relied on by the plaintiff in the then pending suit to be void), and provided that the grant should be thereby validated and declared "good and effectual to pass all the right of the State in and to the said land, and any law to the contrary notwithstanding." The defendant held under a subsequent valid grant from the State. Nash, C. J., delivering the opinion of the Court, said: "If the act of 1852 (declaring plaintiff's grant valid) was intended to give life to the void grant, under which the plaintiff claims the premises, by giving a construction to it, the act was a judicial one, which it was not in the power of the Legislature to pronounce. If it be considered purely a legislative grant to the lessor of the plaintiff, then it violates the contract it made with the defendant Taylor, and is void."
It is contended, however, that the Legislature has the power to pass remedial acts, and especially is authorized to so alter the rules of evidence as to afford relief to litigants. But the limit to such authority is transcended, said Seawell, J., when a law is enacted which in its enforcement has the effect of depriving "one individual of his property without his consent and without compensation, and transferring it to another." Robinson v. Barfield, supra. The principle governing this controversy was as clearly stated by Daniel, J., in an opinion delivered in the same case, when he said that "The transfer of property from one individual, who is the owner, to another individual is a judicial (486) and not a legislative act. When the Legislature presumes to touch private property for any other than public purposes, and then only in case of necessity and upon rendering full compensation, it will behoove the judiciary to check its eccentric course by refusing to give any effect to such acts."
We think that where a deed or contract purporting to convey passes an equitable interest in land it is not upon its face void, and the Legislature has the power to enact remedial laws regulating the probate and registration of such instruments, though the incidental effect may be to admit to registration a deed or contract, which could not previously be proven, and to enable the person claiming under it to use it in establishing his title. It has been suggested, however, that the Legislature has the power to give efficacy retrospectively to contracts like that under consideration, which have been so often declared void for uncertainty, because it has also been held that they were void at the election of the person to be bound thereby (just as in the case where the agreement is merely verbal), and that being voidable the Legislature had the power to impart vitality to them. But we do not think that the line of demarcation, which indicates the limit of legislative authority, *Page 365 
can be made to depend upon the question whether the agreement is void or voidable. The deed of a married woman is void; that of an infant void at his option on arriving at maturity, and the leading authorities concur in sustaining the general proposition that the contracts of infants are voidable only; yet it will not be contended that a statute allowing all conveyances theretofore made by infants to be registered and declaring them effectual to pass the land described in them would be held constitutional so as to divest title out of such infants without their consent. How can such a statute be distinguished from one which operates to divest title out of a party against his (487) will because he has signed a paper or entered into a verbal agreement which the laws declares, just as in the case of an infant, has passed no interest, legal or equitable, in the land which purports to be the subject of the agreement?
An unregistered deed, executed with all of the formalities prescribed by law, conveys an equity which would descend to the heirs of the grantee. A law which gives efficacy to the probate of such a deed merely provides for transferring the legal estate by certain proof to the person who had previously been the real owner in equity. It transfers the legal estate to such equitable owner as did the statute of uses, but it does not disturb the vested beneficial right. If in that case the deed were ineffectual upon its face to pass any interest, legal or equitable, no remedial statute could impart efficacy to it. Robinson v. Barfield, supra. It would seem, therefore, more accurate to declare that the power to enact remedial statutes giving effect to contracts for the sale and conveyances of land extends only to those cases where the grantee or other person deriving benefit from their enforcement had, previous to the passage of the law, an equitable right, and not to cases where the policy of the law or the express provision of a statute had prevented the transmission of any interest whatever by the instrument or agreement relied on.
Contracts are made with a view to the legislative authority to provide for proving in the readiest manner that the parties actually entered into them, but the parties are not deemed to have acted in reasonable contemplation of such an alteration in the law as to change its policy and thereby transfer both the legal and equitable estate in land without the consent of the owner. As the case involves an important principle, it may not be improper to cite numerous additional authorities from the appellate courts of many of the States in which an effort has been made to fix and determine the limit to the authority to pass (488) remedial laws.
In Alter's Appeal, 67 Pa. St., 341, the Supreme Court of Pennsylvania declared it incompetent for the Legislature to empower the courts *Page 366 
to correct a mistake in a testator's will which rendered it inoperative, and thereby deprive his heirs at law of property that had descended to them. In another case it was held by the Court of Nevada that where a testator left no heirs the Legislature had power to waive the right of the State to take his property as an escheat by validating a will in favor of his devisees, but could not have divested the title of his heirs at law if any had been known. Estate of Stickworth, 7 Nevada, 229. In Hasbranch v. Milwaukee, 13 Wis. 37, that eminent jurist, Dixon,C. J., in discussing an act to validate a contract void when executed, for want of power in the city authorities of Milwaukee, said: "A contract void for want of capacity in one or both of the contracting parties to enter into it is as no contract. And to admit that the Legislature, of its own choice and against the wishes of either or both of the contracting parties, can give it life and vigor, is to admit that it is within the scope of legislative authority to divest settled rights of property, and to take the property of one individual or corporation and transfer it to another." It should be noted that the deed in that case was void at the election of the city. See also, Mills v. Charlton, 29 Wis. 413. Where a conveyance is void for want of power in the grantor to convey the estate that it purports to pass, it cannot be validated by statute.Shruk v. Brown, 61 Pa. St., 327. It has been held that a lease void under the statute cannot be validated by the receipt of rent. Sedgwick Wait T.T. to R.P., 379, and notes. When the subsequent ratification by the contracting party cannot give validity to an agreement (489) to rent, because it is void under this same statute of frauds, it is difficult to understand how the Legislature, despite the protest of the parties to a deed and their privies, can by altering the rules of evidence restore it to life. In Underwood v. Tilly, 10 S. R., the Supreme Court of Pennsylvania said "that the retrospective operation of laws would be supported when they impair no contract or disturb no vested right, but only vary remedies, cure defects in proceedings, otherwise fair, which do not vary existing obligations contrary to their situation, when entered into and when prosecuted." The Supreme Court of New Hampshire held that the Legislature had no power, as against parties not assenting to validate a fraudulent sale of corporate property. R.R. v. R.R.,50 N. H., 50.
To declare by statute in terms that Mrs. Calloway intended to convey when she actually aliened nothing, would be a legislative usurpation of judicial power, and to change the general remedy applicable to preexisting contracts so as to pass an estate now, when no equitable right vested in Harris at the time of the execution of the paper, even if it be accomplished by modifying the rules of evidence, would be to disturb a vested right by transferring the land without compensation to the *Page 367 
owner from whom it is taken after it had been aliened to a purchaser for value. Norman v. Hoist, 5 W. S. (Pa.), 17. There is a general presumption against the retroactive operation of statutes, and they will, in cases like that at bar, where it will impair vested rights to apply them to past transactions, be construed to affect rights accruing after their enactment. Endlich, secs. 271 to 274; Richardson v. Cook, 3 Vt. 599.
Where deeds are executed by virtue of a judicial decree, and are voidable only, not void, by reason of some irregularity growing out of a failure to follow the mode of procedure prescribed by law in the conduct of the action or proceeding, it is clearly competent to cure such defects by remedial legislation, and where the action or proceeding (490) has been instituted and prosecuted in good faith, it is not only eminently just, but it serves the important end of preserving the public confidence in the stability of judgments of the Courts to resort to the law-making power for such relief. Hence the curative acts, affecting irregularities in special proceedings, have been upheld by the Courts, as they cannot be collaterally impeached, and are voidable only in the absence of such remedial acts at the instance of a party to them, not void. Edmundson v. Moore, 99 N.C. 1; Ward v. Lowndes, 96 N.C. 367;Bell v. King, 70 N.C. 330; Herring v. Outlaw, ib., 334. In such cases the curative statute divests no vested right because the theory of the decisions upon the subject has always been that an estate vests under the decree, subject, however, to be avoided in the absence of legislation on notice of a party to the proceeding, or to be validated and made conclusive on the parties by a proper statute. Moore v. Gidney,75 N.C. 34. Such proceedings differ widely from contracts of infants, or such as are not enforceable under the statute of frauds. In the one instance a prima facie title passes, though it is defeasible; in the other the contract is unlawful in its incipiency, passes nothing. The one is valid until it is avoided, the other is void until it is validated. Parties are supposed to contract with reference to the power of the law-makers to withdraw the mere right to avoid, but not in contemplation of the enactment of a statute which would operate as a compulsory ratification, and divest a vested interest without the consent of him who holds it. It is like the distinction between destroying a mere right or possibility, which must have been expected when it was created, and the taking of an interest in land without compensation. Bass v. NavigationCo., 111 N.C. 439. Thus the distinction between this line of cases and those in which the right of recovery depends upon (491) giving effect to a deed or contract, that has once been on its face absolutely void, or voidable at the election of the party to be bound, because executed contrary to the prohibition of a statute, or not in the *Page 368 
only mode declared by it to be sufficient, or in violation of a rule declared by public policy. In Condry v. Cheshire, 88 N.C. 375, it was held that a void judgment could be attacked without any direct proceeding to vacate it. Doyle v. Brown, 72 N.C. 393; Stallings v. Gulley, 48 N.C. 344.
The statutes that provide for supplying lost records are also within the scope of legislative authority, because they only give to certain persons the means of setting up and establishing valid titles, and the parties who actually aliened and passed title to them cannot complain, because all right has already been divested out of them, and they are presumed to have conveyed with reference to the legislative power to provide for restoring the evidence of what had been actually accomplished, not simply attempted in the face of a statute declaring the attempt in advance ineffectual. Adlev. Sherwood, 3 Wharton (Pa.), 484.
As we have already stated, after a deed has been executed, if it be valid upon its face, the grantee takes an equitable estate under it, till by force of registration (which is our modern substitute for livery of seizin) the legal estate vests in him. He being the owner in equity, it is no interference with vested right to provide by law a more convenient mode of proving the execution or to ratify a probate that is informal, or was taken by an officer not empowered to do so, but who mistook his power. Freeman v. Person, 106 N.C. 251; White v. Connelly,105 N.C. 65; Young v. Jackson, 92 N.C. 144; Tatom v. White, 95 N.C. 453. The probate is but an ex parte ascertainment, by authority of law, that the instrument registered is authentic (Young v. Jackson, (492) supra), and does not conclude the parties to it as to its legal effect. It is competent for the Legislature to cure a defective probate where the instrument has already been recorded, as it is to prescribe the mode of proving in future, and parties contract with a view to the possible, if not probable, exercise of this power. The Legislature is empowered, unquestionably, to pass a law extending the statute of limitations or making the time shorter, if a reasonable time is given for the commencement of an action before the bar takes effect. Strickland v.Draughan, 91 N.C. 103. The principle announced in this case is not inconsistent with the doctrine (laid down in Eaken v. Raub, supra) that a man cannot be deprived of his land "instantaneously under the pretense of limiting the period in which he should bring his action." Neither can he be instantaneously robbed of his property, the possession of which he is about to recover in the courts, under the guise of modifying the rules of evidence. So the principle decided in Alexander v. Comrs., 70 N.C. 208, has no bearing upon this case. Where one holds what purports to be a contract made on behalf of the State by an agent, but which is in reality void for want of authority in the agent to bind *Page 369 
the State, the Legislature has the power to assume the obligation, just as it could have provided for the payment of the claim if no agreement had been entered into. "Municipal corporations are mere agencies of the State through which the sovereign acts in matters of social concern." Bass v.Navigation Co., supra; Southerland Stat. Cons., sec. 488. The right to limit involves the power to dispense with limitations. Ib. But the Legislature cannot take the property of one man and give it to another, though an attempt may be made to transfer it by a judicial proceeding, as by a sheriff's sale. Ib., sec. 484, and note.
Where a party prays an appeal to an appellate court, the (493) judgment of the court below is thereby vacated, subject to the condition that he shall perfect his appeal either under any law existing when he appeals, or that may be enacted before his cause is heard in the appellate court, and a curative act which gives him a status in the higher court is considered to have been in contemplation of the parties at all times and divests no title but simply provides the means of fairly ascertaining the rights of the litigants. Walker v. Scott, 104 N.C. 481.Cooley, J., says (Const. Lim., 371), in treating of irregularities that may be cured by statute: "And if the irregularity consists in doing some act, or in the mode or manner of doing same act, which the Legislature might have made immaterial by prior law, it is competent to make the same immaterial by subsequent law." But where the defect which the act seeks to remedy affects the jurisdiction of the court, it is in violation of fundamental principles to give it a retrospective effect. Ib. The learned judge must not be understood as maintaining that the Legislature has the power to pass any retroactive remedial law which it would have been within the scope of its authority to have enacted for future operation. Under a principle no man's property would be secure against the judicial authority of the law-making department of the government.
If the receipt was void for uncertainty as a contract, and the defendant acquired no legal or equitable right that could then be enforced, the General Assembly had no more authority, even under the guise of changing the rule of evidence or providing a new remedy to transfer the life estate of Mrs. A.P. Calloway and the remainder in fee of her daughters to the defendant, by a general than by a special act, naming the parties and setting forth their relation to each other. Such (494) special acts have been declared by this Court to be in contravention of the organic law, not only as attempts to divest vested individual rights, but as infringements on the part of the Legislature upon the power of the judicial branch of the government. Stanmire v. Taylor, supra.
We conclude, therefore, that the Legislature did not intend that the statute should apply to preexisting contracts, but only to those entered into after its passage. *Page 370 
In permitting the defendant to explain what land was referred to we think there was error.
NEW TRIAL.