C. L. BOOTH, TRUSTEE OF ELIZABETH JAMES ET AL., v. SAMUEL HAIRSTON.

(Filed 23 February, 1927.)

**1. Deeds and Conveyances—Gifts — Parent and Child — Registration— Statutes.**

A deed of gift of lands from a mother to her son is void *ab initio* unless registered in two years under the provisions of our statute, C. S., 3315.

**2. Same—Wills—Devise.**

And where the son has failed to register his deed as the statute requires, for whatever reason, he may not successfully claim the lands against a devise thereof to his sister's child under the will of her grandmother, it appearing that the mother continued for more than two years to exercise absolute ownership over the lands until the date of her death.

**3. Same—Curative Statutes.**

Where a mother has made a deed of gift of her lands to her son, who has failed to have it registered in the time required by C. S., 3315, and it is for that reason void, a later curative statute extending the time for registration cannot revive the void deed to the son. Under the facts, vested rights thereunder have been acquired. Constitution of North Carolina, Art. I, sec. 17.

STACY, C. J., and ADAMS, J., dissenting.

APPEAL by defendant from *Shaw, J.,* and a jury, at May Term, 1926, of GUILFORD. No error.

The material facts will be set forth in the opinion.

*Meade & Meade and King, Sapp & King for plaintiffs.*

*Brooks, Parker & Smith, Andrew Joyner and Malcom Horne for defendant.*

CLARKSON, J. This action was brought by plaintiffs against the defendant to set aside a deed made by Mrs. A. E. George to her son Samuel Hairston, defendant, to certain land in the city of Greensboro. Mrs. George's first husband was George Hairston, father of defendant. The deed in controversy bears the date of 21 February, 1921, and purports to convey to the defendant, Samuel Hairston, the land in litigation in fee simple. The deed was acknowledged before J. L. Bagby, commissioner of deeds of North Carolina, in Richmond, Va., on the above date, and was filed for registration in the office of the register of deeds of Guilford County on 15 January, 1924.

It was alleged in the complaint that the deed was without consideration, void and of no effect, and a cloud on plaintiffs' title and prayer that it be canceled of record. The defendant in regard to the circumstances of the execution of the deed to him, in his answer says: "At the same time she produced a deed to this defendant, which paper she had and which had never been seen by this defendant before, and as to which this defendant had no sort of knowledge of any kind or character, and Mrs. A. E. George then stated that as he, the defendant, knew, she had always intended to give to him a fair proportion of her estate that she greatly appreciated his lifelong consideration of her and her feelings; that she had had this deed prepared for the purpose of carrying out her

desire that he should have this property in Greensboro." That the "same was legal, valid and effectual for every purpose and was then and there delivered by Mrs. A. E. George to this defendant. . . . And the transaction was simply one of mother desiring to give to her son certain property she owned and executed deed therefor in due course. . . . That after receiving this deed, this defendant saw no reason for hurrying in having it recorded and deposited same in his safety deposit box in The First National Bank with the intention of allowing it to remain until convenient opportunity should arise in a short time to forward it to Guilford County to be placed on record." That for the reason of illness and not having any occasion to do so, he did not go to Greensboro until 15 January, 1924, to attend a business meeting, when he took the deed and had it recorded on that date. The answer shows that the deed was one of gift.

In the court below it was tried out on an issue found by the jury against the defendant. The defendant assigned numerous errors in the trial below and appealed to this Court. The plaintiffs, appellees in this Court, filed a supplemental brief and contend that the deed was one of gift and void because not registered within two years, and cites C. S., 3315, which is as follows: "All deeds of gift of any estate of any nature shall within two years after the making thereof be proved in due form and registered, or otherwise shall be void, and shall be good against creditors and purchasers for value only from the time of registration."

The deed which plaintiffs are attacking bears date and was signed on 21 February, 1921, and was recorded on 15 January, 1924—two years, ten months and 25 days after the record evidence discloses that it was signed, and ten months and 25 days after the time allowed by the statute for recording.

It is contended by plaintiffs, therefore, that it had been void under the foregoing statute ten months and twenty-five days at the time it was put on record. Plaintiffs further contend that if the deed under which defendant is claiming title had been a valid and bona fide deed of gift, as contended by defendant, and even if it were not absolutely void by reason of the way it was obtained, as contended by plaintiffs in the court below, then the deed became void by the very terms of the statute in consequence of the defendant keeping it in his lock box for more than two years after its delivery without placing it on record. That it was necessary in order for the defendant to obtain title under this deed of gift to place it upon record. The statute made that a condition precedent and title to the property did not vest in him until it was recorded in accordance with the terms of the statute, and plaintiffs insist that by reason of defendant's failure to comply with the statute

aforesaid the deed under which he claims is absolutely void and no title to the land ever vested in the defendant. The statute itself declares that it shall be void.

The defendant, in answer to the position taken by plaintiffs in their supplemental brief contends that the plaintiffs cannot for the first time upon appeal raise the question as to the application of C. S., 3315, *supra.* The fact that there is no allegation made by the plaintiffs in their complaint to the effect that the deed in question is void under the statute, or that the statute is relied upon by the plaintiffs, and therefore the statute has never become an issue in this case.

It is said in *Shipp v. Stage Lines,* 192 N. C., p. 478: "A party is not permitted to try his case in the Superior Court on one theory and then ask the Supreme Court to hear it on another and different theory. *Warren v. Susman,* 168 N. C., 457."

This position is sound and wise, but has no application to the facts in the present action. The pleadings, both complaint and answer, show that the deed in controversy was one of gift. The plaintiffs allege it was without consideration, void and of no effect. If it was one of gift and under the statute void, as contended by plaintiffs why consider defendant's assignments of error in the court below on the issue there tried out. *Cui bono?* If error should be found and a new trial granted, how would it profit the defendant? On the entire record the facts are admitted and a question of law alone arises. If a new trial was awarded, no different result could follow. By analogy where a charge of the trial court is erroneous, but the entire testimony relevant to the inquiry was before the court, it being perfectly apparent that in no aspect of it is there any defense available, our decisions are to the effect that a new trial should not be granted. Our system of appeals is founded on public policy and appellate courts will not encourage litigation by granting a new trial which could not benefit the litigant and the result changed upon a new trial, and the nongranting was not prejudicial to his rights. *Bateman v. Lumber Co.,* 154 N. C., p. 253; *Rierson v. Iron Co.,* 184 N. C., p. 363; *Davis v. Storage Co.,* 186 N. C., 676. "They will only interfere therefore, where there is a prospect of ultimate benefit." *Cauble v. Express Co.,* 182 N. C., p. 451.

The defendant further contends that the statute, Public Laws 1924, Extra Session, ch. 20, ratified 20 August, 1924, extends the time of registration and cures the defect. "That the time is hereby extended until September first, one thousand nine hundred and twenty-six, for the proving and registering of all deeds of gift, grants from the State," etc. It further provides: "All such instruments which have heretofore been or may be probated and registered before the expiration of the period

herein limited, shall be held and deemed from and after such registration to have been probated and registered in due time if proved in due form and registration thereof be in other respects valid." Plaintiffs say the deed having become void under the statute, cannot be validated by the act of 1924. . . . That in order for the defendant to acquire title under the deed it must have been recorded within two years, otherwise it is void. That it was void before the act of 1924 was passed and the act cannot constitutionally validate a void deed and thus disturb vested rights. When this enabling or curative act was passed, Mrs. A. E. George had willed the property in controversy to plaintiffs— on 24 April, 1923— after the two years for registration had expired. Of course the will speaks at her death. C. S., 4165. She died on 1 January 1925, and her will was duly probated. Plaintiffs claim title under the will in this action and the same land is claimed by deed of gift by defendant that was willed to plaintiffs.

Before and after the deed of gift was executed, and until her death, the rents of the property were paid each month to Mrs. A. E. George. The insurance on the building was in her name. The property was on the tax books listed in her name. Thus, after the deed was made, and up to her death, Mrs. George exercised dominion over the property—all with the knowledge and adverse to defendant. For example:

"Checks of Armour & Company, payable to Mrs. Ann E. George, the first of said checks being in words and figures as follows, to wit:

Auditor's No. 203834.                              Treasurer's No. 73009.

Chicago, Ill., 23 December, 1920.

Pay to the order of Mrs. Ann E. George                    $150.00

One hundred and fifty and                          00/100 dollars.
          (H.W.)                              ARMOUR & COMPANY
To Continental & Comml. Nat. Bank,                    Cummings.

Payable at Chicago, Ill.
Messrs. Kountz Bros. Bankers.

Endorsed: Mrs. Ann E. George, also endorsed by the Federal Reserve Bank of Chicago, and Commercial Bank of Danville, Va., C. L. Booth, Cashier."

The last check "dated Chicago, Ill., 21 November, 1924. Armour & Co., to Mrs. Ann E. George, amount $150.00—To Continental and Commercial Nat. Bank, Chicago, Ill. Payable to Messrs. Kountz Bros. Bankers, N. Y. C. *Endorsed by Mrs. Ann E. George,"* etc.

There are forty-four of these checks for $150.00, each payable to Mrs. Ann E. George and endorsed by her, in the record.

We think under the facts and circumstances of this case that Mrs. Ann E. George had such vested right to the property and that she had the right to will it to plaintiffs, and that defendant by his acts and conduct is now estopped to claim under the deed of gift registered after the two years; and the validating statute, if constitutional, cannot be invoked to impair the vested right.

*Walker, J.,* in *Dew v. Pyke,* 145 N. C., p. 303, points out the difference between the two statutes as to grants and gifts and .construes them and says: "It is provided that a deed of gift shall be proved and registered within two years after its execution. So far the statute is like that in the case of grants. But the Legislature did not think this language sufficient to invalidate the deed of gift if the provision as to registration was not complied with by the donee, so it took the precaution to add that if the deed is not registered within two years it shall be void, 'and shall be good against creditors, and purchasers for value, only from the time of registration.' If the requirement that the deed of gift should be registered within two years after its execution was intended as a condition, non-compliance with which should invalidate it, why superadd the words 'or otherwise (it) shall be void'? Revisal, sec. 986. (C. S., 3315.) This may be considered as a legislative construction of the words 'shall be registered within two years after its execution,' to the effect that if the instrument is not so registered it shall not be evidence, unless the time for registration is extended and a new authority to register it is thereby given. . . . But it will be observed that the enrollment is annexed as a condition to the passing of the title, as in the case under our statutes of mortgages, deed of gifts and the other instruments above enumerated. This is all very significant, and plainly evinces, what we have confidently asserted to have been the intention, that the material difference in language should produce a marked unlikeness in meaning, and what difference could there be in the sense of the two statutes other than that, in the one case a failure to register the instrument within the specified time should invalidate it, and in the other it should not? This reasoning is supported by the view of the law manifestly entertained by *Ruffin, J.* (afterwards *Chief Justice*) in *Jones v. Sasser,* 14 N. C., 378, for he recognizes the existence of the very distinction we have made between the act which there declared that gifts of slaves should not be good and available unless registered within one year after their execution, and the general statute merely requiring registration within a given time of other instruments."

In the case of *Robinson v. Barfield,* 6 N. C., p. 420, the *feme covert* was never privately examined, and the law declares the deed a mere nullity and void. The Legislature passed an act confirming the title

notwithstanding the *feme covert* was not privately examined. This Court declared that this could not be done. *Seawell* and *Daniel, JJ.*, both delivering opinions.

In *Hicks v. Kearney*, 189 N. C., p. 319, it was said: "And in *Lowe v. Harris*, 112 N. C., 473: 'But the Legislature of North Carolina is restrained by Article I, section 10, of the Constitution of the United States, and Article I, sec. 17, of the Constitution of North Carolina, not only from passing any law that will divest title to land out of one person and vest it in another (except where it is taken for public purposes after giving just compensation to the owner), but from enforcing any statute which would enable one person to evade or avoid the binding force of his contracts with another, whether executed or executory," citing numerous authorities including the *Robinson case, supra.*

No law can be held valid which divests property out of one and gives it to another, without consent of the owner. This is a universal rule in the states of the union. *Stanmire v. Taylor*, 48, N. C., 207; *Lowe v. Harris, supra.* In certain exceptional cases of necessity and for public purposes, private property may be taken upon payment of "just compensation."

"*Judge Patterson*, in the case of *Vanhorner, lessee, v. Dowance*, 2 Dallas, 310, says: 'The Legislature has no authority to make an act divesting one citizen of his freehold and vesting it in another, without a just compensation; it is inconsistent with the principles of reason, justice and rectitude; it is incompatible with the comfort, peace and happiness of mankind; it is contrary to the principles of social alliance in every free government, and lastly, it is both contrary to the letter and spirit of the Constitution. In short, it is what every one would think unreasonable and unjust in his own case.'" *Robinson v. Barfield, supra; Hicks v. Kearney, supra.*

It will be interesting to call attention to some of the cases in regard to vested rights and retrospective or retroactive statutes, other than those already referred to.

In *University v. Foy*, 5 N. C., p. 58: "The 41st section of the Constitution declares that 'schools shall be established by the Legislature for the convenient instruction of youth, with such salaries to the masters, paid by the public, as may enable them to instruct at low prices, and all useful learning shall be duly encouraged and promoted in one or more universities.'—In obedience to this injunction of the Constitution, the Legislature established the University, and in the year 1789, granted to the trustees of the University, 'all the property that had theretofore or should thereafter escheat to the State.' In the year 1800, the Legislature repealed this grant.—(*Locke, J.*, for the Court held in sub-

stance) : This repealing act is void, it being in violation of the 10th section of the bill of rights, which is a part of the Constitution and declares 'that no freeman ought to be taken, imprisoned or disseized of his freehold, liberties or privileges, or outlawed or in any manner destroyed or deprived of his life, liberty or property, but by the law of the land.' "

*Jones v. Sasser,* 14 N. C., p. 378, the facts. "The plaintiff claimed the slave in dispute under a deed of gift from his father, Arthur Jones, Sr., dated 5 April, 1827, which was not registered until 20 February, 1830. The defendant claimed under a deed from the same person, dated 5 August, 1829, which was registered 10 January, 1830. His Honor instructed the jury that, as the plaintiff claimed under a deed of gift, no title passed by it until it was registered, and, until that took place, that the title remained in his father; that if the latter retained the possession until the deed of August, 1828, the execution of that deed, and its prior registration, gave the defendant title which would not be divested by the subsequent registration of the deed to the plaintiff. A verdict was returned for the defendant, and the plaintiff appealed." *Ruffin, J.,* said: "By the act of 1806, R. c., 701, no gift of slaves is good or available unless made in writing. 'Neither,' the act continues, 'shall such act be valid unless the writing shall be proved or acknowledged, and registered within one year after the execution thereof.' These words seem to denote a purpose in the Legislature, then, to make the registry acts effectual, at least in reference to the gift of slaves." The judgment of the court below was affirmed. *Gregory v. Perkins,* 15 N. C., p. 50.

In the case of *Tooley v. Lucas,* 48 N. C., p. 146, the headnote discloses the nature of that action: "Parol evidence of the contents of a deed conveying a slave, is not admissible, if it was not proved and registered, although full proof has been made of the loss or destruction of the instrument, and proper notice given of the intention to offer secondary proof of its contents."

In *Spivey v. Rose,* 120 N. C., p. 165, *Montgomery, J.,* said: "The plaintiff further objected to the admissibility of the deed on the ground that it was void in law, in that it appeared to be voluntary on its face, being a deed of gift and had not been registered within two years after its execution. His Honor committed no error in overruling this objection. The General Assembly has regularly, every two years, enacted statutes extending the time for the registration of conveyances of real estate, since the execution of this deed up to the time of its registration, the first one on 31 March, 1871, before the death of the testator—even before the will was made. Such acts have been declared by this Court to be in the discretion of the Legislature, and deeds of gift embraced in their provision. *Jones v. Sasser,* 14 N. C., 378; *Scales v. Fewell,* 10 N. C., 18."

---

BOOTH *v.* HAIRSTON.

---

It will be noted that in the above case the enabling registration act was passed before the two years for registration had expired and the deed of gift had become void. This proposition is not disputed.

The enabling act was ratified 20 August, 1924, and extended the time until 1 September, 1926. The deed in question had been void one year, five months and twenty-nine days at that time and we think that this statute has no retroactive operation and that the Legislature has no power to pass an act affecting vested rights. "Especially will a statute be regarded as operating prospectively when it is in derogation of a common-law right, or the effect of giving it retroactive operation will be to destroy a vested right or to render the statute unconstitutional. 25 R. C. L., 787; Black on Interpretation of Laws, 252." *Hicks v. Kearney, supra.*

In *Campbell v. Holt,* 115 U. S., p. 623, it is said: "It may, therefore, very well be held that, in an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, such act deprives the party of his property without due process of law. The reason is, that, by the law in existence before the repealing act, the property had become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff, would be to deprive him of the property, without due process of law." See *Dunn v. Beaman,* 126 N. C., p. 770.

These secret gifts by deed, most frequently to a member of a family, often to the exclusion of others, a good sound public policy enacted into law requires that within two years they should be recorded so that notice be given to the world—"or otherwise shall be void."

Under the facts and circumstances of this case the enabling or curative statute in regard to registration could not validate the void deed, and the statute had no power to resuscitate so as to affect the rights of Mrs. A. E. George. Upon the record we can find

No error.

STACY, C. J. and ADAMS, J., dissenting.

STACY, C. J., dissenting: The decision in this case, as I understand it, is put upon the ground that the deed of gift from Mrs. A. E. George to her son, Samuel Hairston, is void because not registered within two years after its making, and that the Legislature is without power, following a *hiatus* of one year five months and twenty-nine days after it was declared void under the terms of C. S., 3315, to authorize its registration and render it valid as between the parties by the curative or extending

act of 1924. I respectfully dissent from this position, for the reasons so clearly stated by *Ruffin, J.,* in *Jones v. Sasser,* 14 N. C., 378: "The Legislature has certainly the power to enlarge the time for registration, and to pronounce its effect, and if to them it seem good, the courts must execute their will. From time to time, acts giving further time for registration have been passed; and in each, deeds of gift, and indeed all conveyances, except mortgages and deeds of trust, are expressly included; and it is enacted that they shall be as good and valid as if they had been proven and registered within the time before allowed by law. . . . Acts of this character have always received a literal construction; in fact, they are susceptible of none other. The only exception is the case of *Scales v. Fewell,* 10 N. C., 18, in which there was an *hiatus* of one year between the extending acts of 1818 and 1821, and during the interval rights vested in other persons. The Court thought the last act was not intended to defeat such vested rights. But in every other case deeds registered at ever so remote a period have been held, by force of the new registry acts, to be as operative as if registered within the periods prescribed by the acts of 1715 or 1806, or any other general statute."

It will be observed that in the case of *Scales v. Fewell,* above mentioned, the Court held the bill of sale, there registered after the time required for its validity under the act of 1715, good as between the parties, by virtue of the enabling act of 1821, subject only to intervening vested rights of third persons. *Hall, J.,* speaking of the effect of the extending act, said: "I think that that act comprehended and validated the registration of the deed in question as to all future transactions, yet I do not think that it divested rights (of third persons) under the execution which had vested before that time."

The case of *Robinson v. Barfield,* 6 N. C., 391, is also cited for the position that a deed by a *feme covert,* not privately examined as required by the act of 1751, could not be validated by a subsequent act of the Legislature. This case was correctly decided, because in the meantime the *feme covert* died, and vested rights intervened. The case of *Barrett v. Barrett,* 120 N. C., 127, on the other hand, where no vested rights of third persons had intervened, is directly opposite: "The Legislature has power to pass, repeal or modify the laws regulating the manner of executing, proving or recording conveyances, and the exercise of such power to cure defective compliance with former statutes cannot be an interference with vested rights as between the parties to such instruments. *Tatom v. White,* 95 N. C., 453, 459. It only becomes so when third parties have acquired rights which would be impaired by the act which is intended to cure the defective execution, probate or registration. . . . It is competent for the Legislature to provide what mode of

probate shall be valid, and when it does so it can affect past as well as future probates, except that the rights of third parties, claiming prior to the validating act, cannot be divested. Retrospective legislation is not necessarily invalid."

To like effect is the decision in *Steger v. Building Asso.,* 208 Ill., 236, where a mortgage deed, void for want of proper probate, was validated by subsequent statute, the Court saying: "The Legislature may ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality and the curative act interferes with no vested rights." *U. S. Mortg. Co. v. Gross,* 93 Ill., 483.

"If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Cooley's Const. Lim. (7 ed.), p. 531.

The Supreme Court of the United States, in *Mattingly v. District of Columbia,* 97 U. S., 687, speaking of the power of the Legislature in such cases, tersely states the same principle, as follows: "It may, therefore, cure irregularities, and confirm proceedings which, without the confirmation, would be void because unauthorized, provided such confirmation does not interfere with intervening rights."

See, also, *Fibre Co. v. Cozad,* 183 N. C., 600; *Anderson v. Wilkins,* 142 N. C., 157; *Janney v. Blackwell,* 138 N. C., 437; *Lowe v. Harris,* 112 N. C., 472; *Board of Education v. Comrs.,* 183 N. C., 300.

The last sentence of the quotation made by the Court from *Justice Walker's* opinion in *Dew v. Pyke,* 145 N. C., 300, is very significant: "This may be considered as a legislative construction of the words 'shall be registered within two years after its execution,' to the effect that if the instrument is not so registered it shall not be evidence, unless the time for registration is extended and a new authority to register it is thereby given."

There is a distinction made in some of the cases between the force and effect of an act which undertakes to validate a deed, void *ab initio,* and one which simply extends the time for registering a deed, but for which it would be declared void under the statute requiring its registration. *Dever v. Cornwell,* 10 N. D., 123, 6 A. & E. Enc. of Law (2 ed.), 940; 24 A. & E. Enc. of Law (2 ed.), 111; Cooley's Const. Lim. (7 ed.), 528 *et seq.*

But it is the uniform holding, for example, that the invalidity of a mortgage or conveyance of the homestead exemption, executed by the husband alone, may be cured by a subsequent act of the Legislature, if no third persons have acquired vested rights in the land prior to such enactment. *Wildes v. VanVoorhis,* 15 Gray (Mass.), 139; note, 45 A. L. R., p. 436. In so validating a deed, the Legislature is only giving effect "to the act of the parties according to their intent," says the Supreme Court of Arkansas in the case of *Sidway v. Lawson,* 58 Ark.; 117.

The status of unregistered deeds and those registered under extension acts is thus succinctly stated in *Phifer v. Barnhart,* 88 N. C., 333 (second and third head-notes) :

"2. The bargainee in an unregistered deed has a legal title which, though incomplete, cannot be defeated by the mere act of the bargainor in executing another deed to a third party, without notice and whose deed is registered.

"3. Although such deed cannot be given in evidence until registered, and does not therefore convey a perfect legal title, yet, when registered, it relates to the time of its execution, and the title bcomes complete."

These conclusions are supported by numerous authorities cited in the opinion, and the case itself has been followed and cited with approval in a number of later decisions. See Shephard's Citations and Allen's Reported & Cited Cases, 1926.

Speaking to the question in *Tooley v. Lucas,* 48 N. C., 146, *Nash, C. J.,* said: "To the legislative department of the government, belongs the power to enact laws, by which the people are to be governed, and to the judiciary, the right to expound them. While acting within the scope of their legitimate authority, their will is to be obeyed; none have a right to disobey it. Where the language of an act is plain and perspicuous, the act must speak for itself, unless its enactment transcends the power of the Legislature. In this case the Legislature has left no doubt upon the question presented to us. 'All sales of slaves shall be in writing, attested by at least one credible witness, or otherwise shall not be deemed valid; and all bills of sale of slaves shall within twelve months after the making thereof, be proved in due form, and recorded; and all bills of sale, and deeds of gift, not *authenticated* and *perpetuated* in manner by this act directed, shall be *void and of no force whatever.*' Rev. Stat., ch. 37, sec. 19. I need not refer to the proviso in that section. In the succeeding section provision is made for the registration of such conveyances. Here, there is no ambiguity; no room for construction. If not *authenticated and perpetuated* as directed, that is, duly proved and recorded as directed, the conveyance is declared not to be deemed *valid,*

19—193

but to be *void* and of *no effect*. So important is this enactment, that from session to session of the Legislature, it is an invariable practice to pass a law enlarging the time for proving all such conveyances. If a *hiatus* occurs in the link of this chain of acts, and a subsequent act should be passed, the deed may be proved and authenticated under the latter, but when so proved and authenticated, it has no relation back; so that an execution against the bargainor may be levied upon the property contained in it. *Scales v. Fewell,* 10 N. C., 18."

In 12 C. J., 1097, the law on the subject of curative acts is summarized as follows: "Deeds, probates, or other instruments void because of lack of registration or defective registration may be made valid by subsequent legislation as between the parties, but not for the purpose of impairing rights acquired by third persons before the passage of the statute."

I think the act of 1924 is valid, and that, under it, the deed in question is good as between the parties. The fact that Mrs. George, in the meantime, had executed a will, devising the property to others, *ipso facto* vested no right in them, and cannot affect the present suit, for she was living at the time of the passage of the extending act, and under the law, as now written, a will speaks and takes effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will. C. S., 4165.